MARY H. SHELBY, Respondent, *v.* THE SUN PRINTING AND PUBLISHING ASSOCIATION, Appellant.

*Libel — an article charging a woman with being an illegitmate child is libelous* per se.

This action was brought to recover damages for the publication of a libel in the defendant's newspaper. The publication complained of purported to be a report of the proceedings in the Court of Chancery, at Louisville, Kentucky, in the case of a negro who was seeking to obtain a divorce from his wife. The account stated that the defendant in the action for divorce and a sister had been adopted by a leading physician of Louisville, and' that "it is said that both the daughters are illegitimate children of the adopted father's intimate friend, and were raised in a spirit of philanthropy."

*Held,* that the article was libelous *per se,* without proof of special damage.

Appeal from an interlocutory judgment overruling a demurrer to the complaint.

*Franklin Bartlett,* for the appellant.

*Samuel V. Speyer,* for the respondent.

Brady, J. :

This action was instituted to recover damages for the publication of an alleged libel in the Sunday edition of the defendant's newspaper, called "The Sun," on the 2d of December, 1882.

The publication complained of purported to be a report of the proceedings in the Court of Chancery, at Louisville, Kentucky, in the case of a negro who was seeking to obtain a divorce from his wife. In the account given by the defendant, it was said that a certain farmer, John Shelby, stated that the negro's wife was white, and was the adopted daughter of a leading physician of Louisville, and that he (Shelby) had married the sister of the woman (meaning the plaintiff), and further, that subsequent investigation proved the truth of the statement. Then followed the statement: " It is said that both the daughters are illegitimate children of the adopted father's intimate friend, and were raised in a spirit of philanthropy."

The libelous part of the action seems to be that in which it is said that both daughters are illegitimate, and which, of course, includes the plaintiff. The form and substance of the complaint are quite sufficient to justify an action, if the facts stated are susceptible of proof.

The defendant, however, demurred, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, and the theory presented on its behalf is, that, assuming the matter thus particularly referred to to be untrue, no action can be maintained for its utterance, even by publication, without the proof of special damage, which has not been averred.

The learned justice, in the court below, disposed of the demurrer in a very brief opinion, in which he stated that the publication complained of was calculated to reflect disgrace on the plaintiff, in the common estimation of mankind, and further, " the charge implies reproach." And if these views are correct, there can be no doubt that the publication complained of was libelous *per se*, and was sufficient to enable the plaintiff to maintain the action she has brought.

The respective counsel, in elaborate briefs, have called the attention of the court to numerous cases, many of which are familiar, presenting the various phases of libel and slander in legal contemplation. In the great majority, if not in all of them, the words uttered, or the language employed in writing, charged the plaintiff in the action with some disgraceful act, or one involving moral turpitude or moral obliquity, or with conduct or habits affecting his business capacity or his fitness for the office he held or the discharge of its duties; in other words, with some personal delinquency,

demerit or immorality, and thus presenting for consideration some charge relating to the conduct, habits, integrity or qualification of the person himself. In this case there was no charge against the integrity or morality, or behavior or reputation, of the plaintiff. The statement is that she is illegitimate, a circumstance over which, of course, she could have no control, and for which she was personally in no way whatever responsible.

In the estimation of mankind, however, as it is understood, the assertion that a person is illegitimate is a reproach, and one which might, in all probability, frequently subject the person of whom it is said to contumely, to indignity, and, perhaps, to insult. It is unfortunate to be obliged to take this view of human conduct, but we must take the world as we find it, and reason out the problems which are presented to us with reference to human frailties or human prejudices, whatever may be the designation given to a disposition often exhibited to make a person suffer for the deeds of his ancestors.

A libel consists in the composition or publication of a writing to the scandal or contumely of another, by which his fame or dignity may be prejudiced. (Colby's Crim. Law, vol. 2, p. 57.) See, also, Starkie on Slander and Libel (from the 2d Eng. ed. of 1830, p. 166), and see, also, page 168, at which that learned author says: "In short, an action lies for any false, malicious and personal implication tending to alter a party's station in society for the worse, by imputing to him either bad actions or vicious principles, or which diminish his respectability and abridge his comforts by exposing him to disgrace and ridicule; and this without proof of special damages." And hence in the case of *Cropp* v. *Tilney* (3 Salk, 226) it was said that scandalous matter was not necessary to make a libel; it was enough if it induced an ill opinion to be had of the plaintiff or made him contemptible and ridiculous. And in *Villars* v. *Monsley* (2 Wils., 403) the doctrine was declared that the publishing of anything concerning another, which renders him ridiculous or tended to hinder mankind from associating or having intercourse with him, is actionable. And, therefore, to publish in writing of another that he was a rogue or a rascal, swindler or villain, was actionable, although the terms would not have been actionable had they been merely spoken.

Illustrations of the rule, which is to be applied to this case of a kindred character, might be multiplied, but it is not necessary to do it. As soon as the court has arrived at the conclusion that the publication complained of is one which is calculated to subject the party assailed to any one of the consequences named, it becomes its duty to declare the action properly brought and to maintain it.

For these reasons we have arrived at the conclusion that the charge made was one calculated to subject the plaintiff to contumely or reproach, or to prevent her from enjoying the society of persons that might otherwise be disposed to seek it. The judgment of the Special Term is, therefore, affirmed, with liberty to the defendant to answer within twenty days after the service of the order to be entered hereon, and on payment of the usual costs.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, with leave to defendant to answer over in twenty days on payment of costs.